UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAURECIA INTERIORS LOUISVILLE LLC and FAURECIA INTERIOR SYSTEMS USA HOLDINGS LLC,

Plaintiffs,

Case No. 26-cv-14041
Honorable Linda V. Parker

v.

PWO CANADA, INC.,

Defendant.
_______________________________/

**OPINION AND ORDER**
**GRANTING PLAINTIFF FAURECIA INTERIORS LOUISVILLE LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION (ECF NO. 4)**

This breach of contract action, filed on October 22, 2026, arises from an automotive supplier contract between Plaintiff Faurecia Interiors Louisville LLC ("FIS Louisville) and Defendant PWO Canada, Inc. PWO Canada has threatened to stop shipment of certain automotive parts due to an €8 million dispute between European affiliates of FIS Louisville and PWO Canada. On the date the action was initiated, FIS Louisville also filed an "Emergency Motion for Temporary Restraining Order ["TRO"] and Motion for Preliminary Injunction" (ECF No. 4), which is the subject of this decision. The motion is fully briefed. (ECF Nos. 11, 14.)

## Factual and Procedural Background

*Parties & Related Entities*

FIS Louisville is a Tier-One supplier of automotive interior components. (ECF No. 1 at PageID.3 ¶ 4.) FIS Louisville has contracted with Ford Motor Company ("Ford") to supply parts for Ford's U71X CCB vehicle program ("U71X Program"), which relates to the manufacturing of Lincoln Navigator and Ford Expedition vehicles. (*Id.*) Plaintiff Faurecia Interior Systems USA Holdings, LLC ("FIS USA") also is a Tier-One auto supplier. (*Id.* ¶ 5.)

FIS Louisville and FIS USA are separate affiliates and part of Forvia Interiors NA, which in turn is a subsidiary of a global automotive supplier headquartered in Europe, Forvia S.E. ("Forvia"). Forvia was formed by the joinder of two automotive technology suppliers in 2022: faurecia and HELLA. *See* www.forvia.com. Faurecia Autositze GmbH ("Faurecia GmbH"), headquartered in Germany, is another Forvia subsidiary. (*See* ECF No. 1 at PageID.8 ¶ 26.)

PWO Canada is a subsidiary of Progress-Werk Oberkirch AG ("PWO AG"). (*Id.* at PageID.9-10 ¶ 33.) PWO Czech Republic ("PWO-Czech") is another PWO AG subsidiary. (*Id.* ¶ 27.)

*U71X Program Contract – FIS Louisville & PWO Canada Purchase Agreement*

PWO Canada received a nomination letter in or around August 26, 2021, to supply Parts connected to the U71X Program.[1] (ECF No. 1-2.) It is FIS Louisville's sole supplier for 33 specially designed parts ("Parts") for the U71X Program. (ECF No. 1 at PageID.4 ¶ 7.) PWO Canada received tooling purchase orders, together with a purchase order for the Parts, which it accepted. (*Id.* at PageID.6 ¶ 18.)

The purchase order at issue here is FIS Louisville's Purchase Agreement No. 4800011718, dated June 20, 2023 ("Purchase Agreement"). (*Id.*; *see also* ECF No. 1-3.) The Purchase Agreement incorporates Forvia Interiors NA's General Purchasing Conditions ("GPCs"). (ECF No. 1-3; ECF No. 1-4.)

The Purchase Agreement is a requirements contract, obligating FIS Louisville to purchase 100% of its requirements from PWO Canada and PWO Canada to supply 100% of FIS Louisville's requirements. (ECF No. 1 at PageID.6-7 ¶ 19; *see also* ECF No. 1-4 § 12.1.) PWO Canada agreed to deliver Parts to FIS Louisville "both in the quantities and at the times specified . . . in such quantities and at such times as may be indicated in the [FIS Louisville's] Releases." (ECF No. 1 at PageID.7 ¶ 20; ECF No. 1-5 § 13.4.2.) The Purchase

[1] It is unclear which entity nominated PWO Canada, although that detail is irrelevant to the current dispute.

Agreement provides "that time is of the essence" for the performance and delivery of Parts. (ECF No. 1 at PageID.7 ¶ 21; ECF No. 1-5 § 13.4.1.)

PWO Canada supplies the Parts on a just-in-time basis pursuant to the Purchase Agreement. (ECF No. 1 at PageID.12 ¶ 43.) This means the Parts are to be supplied precisely on the date required and in the quantity ordered. (*Id.*; *see also id.* at PageID18 ¶ 71.) FIS Louisville has minimal inventory on hand, with only the Parts needed for production in a 1-2 day period. (*Id.* at PageID.13 ¶ 44.) PWO Canada is the only manufacturer of the Parts worldwide (*id.* at PageID.12 ¶ 42), so if it fails to deliver Parts on time and in the quantity FIS Louisville requires, FIS Louisville will be unable to supply the finished product Ford needs to keep its production lines moving. (*See id.* at PageID.14 ¶¶ 50-52.)

*December 13, 2024 Settlement Agreement*

A dispute previously arose between the parties in connection with the Nomination Letter. (*See* ECF No. 1 at PageID.15 ¶ 55; ECF No. 16-1.) Specifically, in late 2024, PWO Canada asserted an "SOP Hardship" related to the U71X Program. (ECF No. 16-1 at PageID.537.) PWO Canada, on behalf of its applicable subsidiaries and affiliates, and Faurecia Interior Systems, Inc., for itself and on behalf of its applicable subsidiaries and affiliates, entered into a confidential Commercial Settlement and Pricing Agreement ("Settlement Agreement") to resolve the dispute. (ECF No. 16.)

The Recitals in the Settlement Agreement expressly refer to two purchase orders related to the U71X Program: the Purchase Agreement and Purchase Order. 4800011717.[2] (*Id*. at PageID.537.) In addition to specific "Settlement Terms[,]" the Settlement Agreement includes a waiver provision related to the SOP Hardship. (*Id*. at PageID.537-38.) It also contains the following "Continued Performance by PWO" provision:

> PWO agrees to comply with this Agreement and the obligations under the Requirements Contract, including no threats to stop ship, stop ship, or other breach of the Requirements Contract. The Parties agree to resolve any issues or potential claims in good faith. So long as Forvia complies with this Agreement and the obligations under the Requirements Contract, PWO agrees it shall not suspend its performance under the Requirements Contract and agrees that any nonperformance shall be a breach of this Agreement.

(*Id*. at PageID.538.)

*PWO-Czech & Faurecia GmbH Dispute Leading to Stop-Shipment Threat*

Faurecia GmbH, which is part of Forvia's Seating European business unit, has a contract for the supply of automotive seating parts from PWO-Czech. (ECF No. 1 at PageID.8 ¶¶ 26-27.) In late 2025, PWO-Czech claimed that Faurecia GmbH overstated program volumes by 50%, resulting in €8 million in losses to PWO-Czech. (*See id*. at PageID.9 ¶ 28; see also ECF No. 12-3 at PageID.424-25 ¶¶ 9-10.) PWO-Czech, and PWO Canada here, claim that this

---

[2] Purchase Order 4800011717 is between PWO Canada and Faurecia Interior Systems Saline, LLC. (ECF No. 12-3 at PageID.424 ¶ 6.)

violated Forvia's Codes of Ethics and Conduct, specifically § 4.2.2. (*See id.*)

Section 4.2.2 provides:

> All assets, liabilities, expenses, and other transactions carried out by companies in the FORVIA Group must be recorded in the companies' books and accounts which are to be kept truthfully and accurately, in accordance with the applicable accounting principles, rules, and laws. No undisclosed funds or unrecorded assets of the FORVIA Group companies or subsidiaries shall be established or maintained for any reason whatsoever. Documents pertaining to commercial or financial transactions must reflect these transactions faithfully. No payment may be approved or made with the intention or understanding that all or any part of such payment is to be used for any purpose other than that described in the documents supporting said payment. No false or artificial entry may be made in the books and records of the FORVIA Group or its subsidiaries for any reason whatsoever.

(ECF No. 11-5 at PageID.350 § 4.2.2.)

On October 12, 2026, PWO AG sent a letter to Forvia concerning that alleged overstatement and resulting loss to PWO-Czech. (ECF No. 1-7.) The letter reflects that PWO had been attempting, unsuccessfully, to resolve the issue directly with Faurecia GmbH since December 2025. (*Id.*) PWO AG requested a meeting with senior decision makers at Forvia and indicated that, absent receipt of compensation for its €8 million loss by October 19, 2026, "PWO Group will have no choice but to suspend performance on Tuesday, October 20, 2026." (*Id.*) Apparently this meant performance as to all PWO-Forvia contracts.

Because, on October 19, 2026, PWO Canada sent an email to Forvia indicating that "due to a pending significant commercial topic between PWO and

Forvia," PWO Canada would stop U71X shipments starting October 21. (ECF No. 1-8 at PageID.169.) PWO Canada subsequently extended the stop-shipment deadline due to continued negotiations between senior management of PWO and Forvia to midnight on October 23. (*Id.* at PageID.168.) As indicated, on October 22, Plaintiffs filed this action and FIS Louisville filed its motion for TRO and preliminary injunction.

*Post-Filing Developments*

On October 23, counsel entered their appearance on behalf of PWO Canada. On the same date, it was communicated to the Court that PWO Canada had agreed to extend the stop-shipment deadline to noon on October 26. Later that date, the deadline was extended to midnight on October 29.

The Court set an October 26 status conference to establish a briefing schedule and hearing date on FIS Louisville's pending motion. The morning of the conference, the parties informed the Court that the stop-shipment deadline had again been extended to midnight on November 5. The Court and counsel for the parties thereafter met, at which time the Court set a briefing schedule and a November 3 hearing date. The day before the hearing, the stop-shipment deadline was extended yet again to November 11. The Court, therefore, adjourned the motion hearing to November 9, to provide the parties with the opportunity to resolve the matter.

The morning of the hearing, the parties informed the Court that the stop-shipment deadline had again shifted, this time through November 18. The Court converted the motion hearing to a status conference. The Court instructed the parties to provide a status update by 3:00 p.m. on November 17, and indicated that if the matter was not resolved by then, the Court would issue a ruling without a hearing.[3]

On November 17, the Court was informed through an email from PWO Canada's counsel that the parties were unable to reach an agreement, but that PWO Canada again had moved its stop-shipment deadline through November 25. In the email, counsel further wrote:

> PWO Canada understands FIS Louisville intends to request the Court convert the TRO motion into a preliminary injunction. PWO Canada's update on these relevant issues are as follows:
>
> PWO Canada objects to the FIS Louisville's request that the Court convert its request for a TRO into a preliminary injunction without setting a briefing schedule for a preliminary injunction, without setting a hearing to resolve material facts in dispute, and without FIS Louisville posting a bond as required under FRCP 65, which makes injunctive relief inappropriate for the Court to rule on the parties' expedited TRO papers.
>
> PWO Canada also objects with FIS Louisville's characterization of the dispute as "only a legal issue." The parties dispute material facts concerning the Commercial Settlement and Pricing Agreement ("Settlement Agreement") inclusion of their "affiliates." PWO Canada

[3] During the status conference, counsel for PWO Canada requested a hearing to be able to respond to Plaintiffs' interpretation of the relevant agreements; however, the Court indicated that it would be able to interpret the contract terms without oral argument.

> contends FIS Louisville and its affiliates have breached Section C of the Settlement Agreement. Therefore, PWO Canada requests that the Court deny FIS Louisville's request for a TRO while FIS Louisville and its affiliates are in breach.
>
> PWO Canada further requests that if the Court finds the Settlement Agreement unambiguous, that it include in any order for a TRO that FIS Louisville and its "affiliates" are ordered to comply with Section C of the Settlement Agreement.
>
> Finally, PWO Canada evidentiary standards for a TRO versus a preliminary injunction are different. As demonstrated above, a preliminary injunction cannot be entered in this case without a hearing to resolve the affiliates dispute. As such, FIS Louisville should be required to present evidence to establish its right to a preliminary injunction and PWO Canada should be given the opportunity to respond.

As set forth earlier, however, FIS Louisville sought a TRO *and* preliminary injunction in its October 22 filing. (*See* ECF No. 4.)

**Standard for Injunctive Relief**

Courts in the Sixth Circuit balance the same four factors when deciding whether to issue injunctive relief, whether in the form of a TRO or preliminary injunction. *See ACLU of Mich. v. Does 1-6*, 755 F. Supp. 3d 1003, 1007 (E.D. Mich. 2024) (citing *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004)). Those factors are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harms to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)) (brackets omitted). The court is not required to make specific findings concerning each of the four factors if fewer factors are dispositive. *In re DeLoreon Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). “A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.” *Id.*

A court may issue injunctive relief “only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.” Fed. R. Civ. P. 65(c). “While this language appears to be mandatory, ‘the rule [in the Sixth Circuit] has long been that the district court possesses discretion over *whether* to require the posting of security.’” *Appalachian Reg’l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). The Court must consider “‘the question of requiring a bond’ when the issue has been raised.” *Id.* (quoting *Roth v. Bank of the Commonwealth*, 583 F.3d 527, 539 (6th Cir. 1978). “Otherwise, it has ‘broad discretion in setting the bond amount.’” *Id.* (quoting *Static Control Components, Inc. v. Lexmark Int’l, Inc.*, 697 F.3d 387, 400 (6th Cir. 2012)).

There is one distinction between a TRO and preliminary injunction in that a preliminary injunction requires "notice to the adverse party," Fed. R. Civ. P. 65(a), whereas a TRO may be entered "without written or oral notice to the adverse party or its attorney" provided certain conditions are satisfied, Fed. R. Civ. P. 65(b)(1). While the Sixth Circuit has interpreted the notice requirement in Rule 65(a) as "imply[ng] a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition[,]" it also has conveyed that its "Rule 65 jurisprudence indicates that a hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552-53 (2007) (collecting cases); *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011) (quoting *Certified Restoration Dry Cleaning*, 511 F.3d at 552) ("More recently, we have clarified that, although a hearing is not required 'when the issues are primarily questions of law,' Rule 65(a)(1) does require a hearing 'when there are disputed factual issues' material to the preliminary injunction."); *Nexus Gas Transmission, LLC v. City of Green*, 757 F. App'x 489, 496-97 (6th Cir. 2018) (quoting *Certified Restoration Dry Cleaning Network*, 511 F.3d at 553) ("[W]here material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.").

Here, there are no disputed factual issues. PWO Canada has raised only disputes concerning legal issues, such as how to interpret the express terms of the Settlement Agreement. Thus, the Court does not find a hearing necessary or warranted. PWO Canada has received fair notice and an opportunity to oppose Plaintiffs' motion.

**Discussion**

*Likelihood of Success*

Under Michigan law, the party asserting breach of contract must demonstrate that (1) there was a contract between the parties, (2) a breach of its terms by the other party, and (3) damages resulting to the party claiming the breach. *See Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). An anticipatory breach occurs where, prior to the time of performance, a party to a contract unequivocally declares the intention not to perform. *See Stoddard v. Mfrs. Nat'l Bank of Grand Rapids*, 593 N.W.2d 630, 640 (Mich. Ct. App. 1999). In that instance, the other party has the option of either suing immediately for the breach or waiting until the time of performance. *Id.*

The evidence undisputedly reflects PWO Canada's unequivocal declaration of its intent not to perform its obligations under the Purchase Agreement by stopping shipment of Parts. FIS Louisville also shows the damages that will result if PWO Canada fails to deliver the Parts in the quantity and by the time required.

PWO Canada nevertheless contends that FIS Louisville committed the first breach or has unclean hands excusing PWO Canada's performance. PWO Canada also argues impracticability.

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994) (citation omitted); *see also Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 461 F. Supp. 3d 531, 542 (E.D. Mich. 2020) (quoting *Flamm v. Scherer*, 198 N.W.2d 702, 706 (Mich. Ct. App. 1972)). The rule applies only when the initial breach is substantial. *Michaels*, 522 N.W.2d at 707. The "unclean hands" doctrine may be used to bar injunctive relief "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Fetch! Pet Care, Inc. v. Atomic Pawz Inc.*, 170 F.4th 546, 553-54 (6th Cir. 2026) (citing *Performance Unlimited, Inc. v. Questar Publishers Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995)). "This doctrine 'requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff had made a complaint[.]'" *Id.* (quoting *Performance Unlimited*, 52 F.3d at 1383).

PWO Canada's "first-breach" and unclean hands arguments are based on two alleged breaches. First, PWO Canada maintains that there was a breach of

Forvia's Code of Ethics and Conduct based on Faurecia GmbH's allegedly gross overstatement of the program volumes awarded to PWO-Czech. PWO Canada next maintains that there was a breach of the Settlement Agreement's obligation "to resolve any issues or potential claims in good faith." Neither breach constitutes a first breach of the Purchase Agreement, however.

PWO Canada's arguments ignore the legal separation between Forvia's various corporate entities and misconstrue the Settlement Agreement. PWO Canada does not identify any term in the Purchase Agreement authorizing suspension of either party's duties based on a claim involving other entities. Nor does it cite caselaw that supports such a response. Even if the alleged volume overstatement violates Forvia's Code of Ethics and Conduct, that statement relates to a contract between two completely separate entities: POW-Czech and Faurecia GmbH.

The Settlement Agreement relates only to the U71X Program and, more specifically the Purchase Agreement between PWO Canada and FIS Louisville and a second purchase order between PWO Canada and a second North American subsidiary of Forvia. While the Settlement Agreement is binding on those entities and their subsidiaries and affiliates, the duty to negotiate in good faith in the Settlement Agreement applies specifically to the contracts at issue, not all contracts between the parties, their parent, or affiliate companies. Nothing in the express

terms of the Settlement Agreement supports PWO Canada's construction to extend the duty to negotiate in good faith to the European dispute.

PWO Canada also maintains that its performance is excused under Uniform Commercial Code § 440.2615. Section 440.2615 provides that it is not a breach of duty under a sale's contract for the seller to delay delivery or not deliver goods

> if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

Mich. Comp. Laws § 440.2615(a). "Performance need not be impossible, but 'there must be a showing of impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved.'" *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 702 (6th Cir. 2017) (quoting *Roberts v. Farmers Ins. Exch.*, 737 N.W.2d 332, 342 (Mich. Ct. App. 2007)) (additional citations omitted). "[T]he defense is viable only if an unforeseen event occurs and "the non-occurrence of that event was a basic assumption on which both parties made the contract." *Id*. (quoting *Karl Wendt Farm Equip. Co. v. Int'l Harvester Co.*, 931 F.2d 1112, 1117 (6th Cir. 1991)) (brackets, ellipsis, and additional citation omitted).

PWO Canada fails to identify a circumstance that has made performance of the Purchase Agreement impracticable. The circumstance identified is wholly

unrelated to the contract between PWO Canada and FIS Louisville. It does not even involve these parties. While PWO Canada provides figures to show how the €8 billion loss impacts another subsidiary of PWO AG, there is no showing that this loss renders PWO Canada's delivery of goods under the Purchase Agreement impracticable.

FIS Louisville therefore shows that it is likely to succeed on the merits of its breach of contract claim.

<u>*Irreparable Harm*</u>

"A showing of probable irreparable harm is the single most important prerequisite to granting injunctive relief." *Cooper-Std. Auto. Inc. v. Daikin Am., Inc.*, 568 F. Supp.3d 846, 848 (E.D. Mich. 2021) (internal quotation marks and citations omitted). "A party's harm is 'irreparable' when it cannot be adequately compensated by money damages." *Id.* (citation omitted). "For an injury to constitute irreparable harm, it must also 'be certain, great, and actual.'" *Id.*

Numerous courts have found irreparable harm in circumstances like this one: the supplier of automotive parts threatens or stops delivery in violation of a requirements contract, which will shut down the supply chain of automotive parts needed to keep an original equipment manufacturer's assembly line moving. *See, e.g., TRW, Inc. v. Indus. Sys. Associates, Inc.*, 47 F. App'x 400, 401 (6th Cir. 2002); *Cooper-Standard*, 458 F. Supp. 3d at 848; *Webasto Roof Sys., Inc. v.*

*Meteor Sealing Sys., LLC*, No. 26-10141, 2026 WL 308912, at *5 (E.D. Mich. Feb. 5, 2026); *Hitachi Auto. Sys. Americas, Inc. v. TI Auto. Ligonier Corp.*, No. 5:19-cv-184, 2019 WL 1995316, at *5 (E.D. Ky. May 6, 2019); *Almetals, Inc. v. Wickeder Westfalenstah L, GmbH*, No. 08-10109, 2008 WL 4791377 (E.D. Mich. Oct. 29, 2008). As the court observed in *Cooper-Standard*: "The 'just-in-time' nature of the automotive supply chain provides potential for large-scale disruption if just one of the down-line companies is unable to fulfill its obligations under contract." 568 F. Supp. 3d at 848 (citation omitted). As another judge in this District observed: "[T]he potentially catastrophic effects of a disruption in the supply chain of automotive parts is well established in the case law of this court." *Eberspaecher N. Am., Inc. v. Nelson Glob. Prod., Inc.*, No. 12-11045, 2012 WL 1247174, at *6 (E.D. Mich. Apr. 13, 2012).

PWO Canada nevertheless argues that Plaintiffs can avoid any irreparable harm by paying under protest the damages claimed in the European dispute, as Michigan Compiled Laws § 440.1308 permits. Unlike *Eberspaecher North America, Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592 (E.D. Mich. 2008), on which PWO Canada relies, this is not a situation where a supplier is seeking increased prices for its goods. *See id.* at 600 (concluding that the automotive company plaintiff would not suffer irreparable harm because it could alleviate the harm by "covering" and paying the defendant's demanded price increase and pursue money

damages with later litigation). Instead, PWO Canada is threatening to stop the supply of Parts due to money claimed is owed under a wholly independent contract.

PWO Canada also points out that it has agreed to extend the stop shipment date. However, as it has not withdrawn the threat to stop shipping parts in the near future, there is still a threat of irreparable harm.

*Balance of Harms and Public Interest*

PWO Canada contends that an injunction would cause more harm than good given the progress the senior management of the parties' parent companies have made over the last few weeks concerning the European dispute. PWO argues that an injunction may cause those negotiations to come to a halt. However, accepting that argument would award PWO Canada's tactic of holding hostage the contract between it and FIS Louisville over a dispute completely unrelated to that contract. Such a tactic should not be encouraged. The parties negotiating the European dispute presumably are under a duty to do so in good faith. Negotiations are not in good faith when tactics such as those being advanced here are used.

When considering the balance of harms and public interest in cases similar to the one here, courts routinely find those interests served by issuing an injunction. *See, e.g., Cooper-Standard*, 568 F. Supp. 3d at 848 (citing cases). As Judge Edmunds wrote in *Cooper-Standard*: "The public interest is best served by

requiring parties to a contract to abide by their agreement." *Id.* (citing *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994)). "The public interest also weighs in favor of the efficient administration of the automotive industry." *Id.* (citing *Key Safety Sys., Inc. v. Invista, S.A.R.L., L.L.C.*, No. 08-CV-10558, 2008 WL 4279358, at *13 (E.D. Mich. Sept. 16, 2008)) (holding that the public interest factor weighed in favor of injunctive relief where compelling the seller to supply automotive parts would avoid consequential plant shutdown or layoffs and would avoid economic harm to the state, region, and nation); *see also Almetals*, 2008 WL 4791377, at *10 ("Denying the injunction places at risk the operations at Almetals, and, correspondingly, numerous customer assembly plants. This would be disastrous, irreparably damaging Almetals' business and reputation, and causing further detriment to the economy. Additionally, the public interest is served by requiring Wickeder to abide by its contractual agreement.")

*Security Bond*

PWO Canada asks the Court to require FIS Louisville to post a security bond if an injunction issues in an amount "commensurate with [PWO Canada]'s reasonably anticipated losses and expenses resulting from the requested injunction." (ECF No. 11 at PageID.319.) The only potential loss PWO Canada identifies, however, is the €8 million related to the contract between Faurecia GmbH and PWO-Czech. No loss to *PWO Canada* has been identified if it is

required to continue performance under the contract at issue in this litigation. Where no harm is shown, a district court does not abuse its discretion in declining to require a security bond. *See, e.g., Appalachian Regional Healthcare*, 714 F.3d at 432.

## Conclusion

For these reasons, the Court concludes that the relevant factors weigh in favor of issuing injunctive relief.

Accordingly,

**IT IS ORDERED** that Plaintiff Faurecia Interiors Louisville LLC's motion for temporary restraining order and for preliminary injunction (ECF No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that, until further order of the Court, PWO Canada is enjoined from taking any action inconsistent with its obligations under the Purchase Agreement. More specifically, PWO Canada shall perform its obligations and supply the Parts under the Purchase Agreement at the place, in the quantity, and on the dates required by FIS Louisville and otherwise in accordance with the Purchase Agreement.

Date: November 24, 2026 s/LINDA V. PARKER
U.S. DISTRICT JUDGE